UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRUMP MEDIA & TECHNOLOGY
GROUP CORP. (f/k/a Digital World
Acquisition Corp.) and TMTG SUB INC.,

    Plaintiffs,

v.                                                              Case No: 8:24-cv-02161-KKM-AEP

ARC GLOBAL INVESTMENTS II LLC,
PATRICK ORLANDO, UNITED
ATLANTIC VENTURES LLC,
ANDREW LITINSKY, and
WESLEY MOSS,

    Defendants.
_____

# ORDER

Plaintiffs move to remand this action to the circuit court for Sarasota County, Florida. (Doc. 14). Defendants ARC Global Investments II LLC and Patrick Orlando respond (Doc. 24) in opposition.

## I.  BACKGROUND

Trump Media & Technology Group Corp. (Trump Media) is a publicly traded company, created through the merger of Digital World Acquisition Corp. (DWAC) and

a private company, TMTG Sub Inc. (Old TMTG).[1] Second Am. Compl. (Doc. 1-1) ¶ 1. Trump Media and Old TMTG are the Plaintiffs. Defendants are persons and entities involved in the merger. Defendant Patrick Orlando previously served as DWAC's Chairman and CEO. Second Am. Compl. ¶ 13. Defendant ARC Global Investments II LLC (ARC), allegedly controlled by Orlando, served as DWAC's "sponsor" before the merger and invested in DWAC. Second Am. Compl. ¶ 14. Defendants Wesley Moss and Andrew Litinsky served as de facto officers and directors of Old TMTG. Second Am. Compl. ¶¶ 16–17. Defendant United Atlantic Ventures LLC (UAV) is a company founded by Moss and Litinsky. Second Am. Compl. ¶¶ 15–17.

According to Plaintiffs, before DWAC went public, Defendants devised an unlawful scheme to merge Old TMTG and DWAC. Second Am. Compl. ¶¶ 5, 74–133. Plaintiffs allege that, in an attempt to accomplish this scheme, Orlando, among other things, falsely represented to the SEC and investors that DWAC did not intend to merge with any specific company before DWAC's initial public offering (IPO). Second Am. Compl. ¶¶ 6, 93–98, 114, 128–32.

DWAC's IPO occurred in September 2021. Second Am. Compl. ¶ 131. In July 2023, the Securities and Exchange Commission (SEC) concluded that DWAC violated

---

[1] Before the merger, Old TMTG was known as Trump Media & Technology Group Corp. Second Am. Compl. at p. 1 n.2. Now Old TMTG is a wholly owned subsidiary of DWAC, which is known after the merger as TMTG. Second Am. Compl. at p. 1 n.2. The merger occurred on March 25, 2024. Second Am. Compl. at p. 1 n.2.

2

federal securities law under Orlando's direction. (Doc. 1-1) at p. 61–72. As a result, the SEC imposed on DWAC an $18 million penalty and a cease-and-desist order. (Doc. 1-1) at p. 70. Plaintiffs allege that they have "suffered hundreds of millions of dollars of loss as a result of the delay and damage to [Trump Media's] reputation" caused by the SEC's investigation. Second Am. Compl. ¶¶ 7, 148–55.

Separately, Plaintiffs allege (1) that Moss and Litinsky failed to manage Old TMTG using good faith or due care, leading to a delay in the successful launch of Truth Social, and (2) that Orlando failed to competently serve as CEO of DWAC. Second Am. Compl. ¶¶ 156–77. Plaintiffs allege that Orlando acted to obstruct the eventual merger between Old TMTG and DWAC. *See* Second Am. Compl. ¶¶ 178–90.

Plaintiffs began this action in Florida circuit court on February 27, 2024. (Doc. 1-3) at p. 5–30. Plaintiffs amended the complaint on March 17, 2024, (Doc. 1-3) at p. 103–130, and again amended the complaint on September 3, 2024. (Doc. 1-1) at p. 2–59. The second amended complaint includes twelve counts, each of which states a claim based solely on Florida law. Second Am. Compl. ¶¶ 198–300.

On July 17, 2024, the SEC filed a civil enforcement action against Orlando based on his actions during the merger of Trump Media. (Doc. 1-1) at p. 74–102. The SEC alleged that Orlando violated federal law, including Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (Doc. 1–1) at p. 76. In the second

3

amended complaint, Plaintiffs (1) attach as an exhibit both the cease-and-desist letter from the SEC and the SEC's complaint filed in Orlando's case and (2) allege facts alleged in the SEC's papers. *See, e.g.*, Second Am. Compl. ¶¶ 7–8, 118–30, 144–47. Some of the factual allegations from the SEC's filings are realleged in 10 of the 12 counts in the second amended complaint. Second Am. Compl. ¶¶ 198, 213, 230, 238, 248, 260, 272, 279, 286, 291.

Defendants ARC and Orlando filed a notice of removal on September 12, 2024, to which all other Defendants consent. Notice of Removal (NOR) (Doc. 1). The notice of removal claims "federal-question" jurisdiction. NOR ¶¶ 33–44. The next day, Plaintiffs asserted an emergency and moved to remand. Mot. to Remand (Doc. 14). Plaintiffs argue that an expeditious remand is necessary to permit the state court to provide long-delayed relief in an important and time-sensitive discovery dispute. Mot. to Remand at 4. Plaintiffs argue that (1) the state-court complaint reveals no basis for federal subject-matter jurisdiction; (2) the notice of removal is untimely; and (3) the Defendants waived any right to removal. Mot. to Remand at 12–23. Plaintiffs moved for attorney's fees. Mot. to Remand at 23–24. Defendants ARC and Orlando moved to strike the "emergency" designation from Plaintiffs' motion (Doc. 15), but the motion to strike was denied. (Doc 16). Defendants ARC and Orlando responded to Plaintiffs' motion to remand. Resp. to Mot. to Remand (Doc. 24).

4

## II. LEGAL STANDARDS

Except as otherwise provided by federal law, a defendant may remove to the district court any civil action brought in state court when the district court has original jurisdiction over the civil action. 28 U.S.C. § 1441(a). The district court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal-question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This means that a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Williams*, 482 U.S. at 392.

A civil action "can arise under federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (alteration adopted and quotation marks omitted). First, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn*, 568 U.S. at 257. And second, even when a plaintiff asserts a state-law cause of action, federal jurisdiction "will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. This second category is "special and small." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

On a motion to remand, the "removing party bears the burden of establishing jurisdiction." *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). Removal statutes are "construed narrowly" and "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

### III.  ANALYSIS

In their notice of removal and response to Plaintiffs' motion to remand, Defendants ARC and Orlando argue that Plaintiffs' "allege[] a violation of a federal statute for which there is a private, federal cause of action," and therefore, that Plaintiffs "allege[] a claim" arising under federal law. NOR ¶ 33; Resp. to Mot. to Remand at 8–10. Defendants ARC and Orlando argue that the resolution of some of Plaintiffs' causes of action will require interpreting and applying federal law. NOR ¶¶ 35–36; Resp. to Mot. to Remand at 11–15.

First, Defendants ARC and Orlando point to the second amended complaint's allegations concerning the SEC's civil enforcement action against Orlando. NOR ¶ 37; Resp. to Mot. to Remand at 8. These allegations, Defendants ARC and Orlando claim, are "incorporated into all but two of the twelve counts" of the second amended complaint. NOR ¶ 38. The second amended complaint also states that Plaintiffs' claims are based "at least in part, on the allegations contained in the SEC Orlando Complaint." Second Am.

6

Compl. ¶ 8. Second, Defendants ARC and Orlando point to Plaintiffs' allegation in the second amended complaint that the SEC found that DWAC, "under Orlando's leadership," violated "Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder." NOR ¶ 39 (quoting Second Am. Compl. ¶ 145). Defendants ARC and Orlando note that the second amended complaint includes allegations that Defendants violated securities laws. Resp. to Mot. to Remand at 8 (citing Second Am. Compl. ¶¶ 5, 36, 51, 78, 79, 106, 202).

Third, Defendants ARC and Orlando cite the same allegation in Count I (breach of fiduciary duty of loyalty against Orlando) and Count II (breach of fiduciary duty of care against Orlando) of the second amended complaint. The twice-cited allegation provides that "[i]n furtherance of the Pre-Targeting Conspiracy, Orlando falsely represented in public filings that DWAC did not intend to merge with any specific company, despite repeated and numerous communications and plans with Old TMTG representatives." NOR ¶ 40 (quoting Second Am. Compl. ¶¶ 203, 218). Defendants ARC and Orlando argue that the twin allegations qualify as additional allegations of "supposed § 10(b) and Rule 10b-5 violations." NOR ¶ 40; Resp. to Mot. to Remand at 10. Fourth, Defendants ARC and Orlando point to an allegation in Count V (violation of Florida's Deceptive and Unfair Trade Practices Act against Orlando and ARC), which provides in part that, "[w]hile serving as a Director of DWAC, Orlando made public statements that were

7

harmful to the Company in violation of his duties." NOR ¶ 41 (quoting Second Am. Compl. ¶ 243). Defendants ARC and Orlando argue that this is another incorporation of "the material allegations of a § 10(b) and Rule 10b-5 claim." NOR ¶ 41.

Fifth and finally, Defendants ARC and Orlando cite a group of other allegations and claims against ARC, Moss, Litinsky, and UAV, which Defendants ARC and Orlando argue represent additional attempts to bring federal securities claims in state court. Resp. to Mot. to Remand at 9–10. Defendants ARC and Orlando argue that, by bringing these claims, Plaintiffs have explicitly pleaded a federal question. Resp. to Mot. to Remand at 10. But even if Plaintiffs have not explicitly pleaded a federal question, Defendants ARC and Orlando argue that the resolution of Plaintiff's claims "necessarily turns on whether Orlando, with ARC II's material assistance, violated § 10(b) and Rule 10b-5" and thus the state law claims in the second amended complaint actually arise under federal law. NOR ¶ 42; Resp. to Mot. to Remand at 11–14.

Plaintiffs first respond that the "mere existence of a purported [private] federal cause of action" is irrelevant for the purpose of a federal court's subject-matter jurisdiction. Mot. to Remand at 13. Second, Plaintiffs argue that, although their fiduciary duty causes of action allege in part conduct that the SEC has found to violate federal law, as evidenced by the SEC's complaint against Orlando, the allegation in a state court complaint, stating only state law claims, of facts also constituting a federal law violation, is not enough to establish

8

the presence of a substantial, disputed federal question. Mot. to Remand at 13–14. Plaintiffs' final argument is that their state law fiduciary claims do not turn on an open question of federal law because the SEC has already determined that Defendants have violated federal securities regulations. Mot. to Remand at 14, 16. In other words, adjudication of Plaintiffs' claims does "not require the resolution of a federal question," but rather "requires a determination of whether this already determined federal question also amounts to a breach of Defendants' fiduciary duties to Plaintiffs." Mot. to Remand at 16 (emphasis omitted). More precisely, the adjudication of Plaintiffs' claims depends on whether the alleged conduct, including conduct alleged by the SEC elsewhere, establishes a state law claim alleged by Plaintiffs.

The mere availability to the Plaintiffs of a federal private cause of action is irrelevant. "[P]laintiffs are the master of the complaint and are free to avoid federal jurisdiction by structuring their case to fall short of a requirement of federal jurisdiction." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (quotation marks and citation omitted). Plaintiffs have done so here by alleging only state law claims. Plaintiffs have not expressly pleaded a federal question.

Defendants ARC and Orlando argue that the "vindication" of Plaintiffs' state law claims "necessarily turns on" whether Orlando—with ARC II's assistance—violated federal law. NOR ¶¶ 35–36, 42 (citation omitted); Resp. to Mot. to Remand at 8, 11–14.

9

Although Plaintiffs allege that the SEC has found that Orlando violated federal securities law, a circuit court's finding that conduct by Orlando, Moss, or Litinsky, breached their fiduciary duties requires neither an interpretation nor an application of federal law by the circuit court. And the same is true of the other claims in the second amended complaint. In fact, the circuit court's characterization and adjudication of the Defendants' conduct is neither controlled nor even influenced by the SEC's characterization and adjudication.

The shortcomings in Defendants ARC and Orlando's argument are apparent upon comparison of this action to one on which Defendants ARC and Orlando rely, *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), an action brought in state court under Georgia's RICO statute, which the defendants removed. 234 F.3d at 516. The plaintiffs alleged that the National Traffic and Motor Vehicle Safety Act imposed a duty on the defendants to disclose safety defects in their automobiles and that the defendant's failure to disclose constituted federal mail and wire fraud. *Ayres*, 234 F.3d at 516–17. The federal mail and wire fraud offenses were the predicate acts necessary to state a RICO claim. *Ayres*, 234 F.3d at 517. The plaintiffs asserted that the district court lacked subject-matter jurisdiction, but the Eleventh Circuit disagreed for two reasons. First, the RICO claim required the plaintiffs to prove "as an essential element of their state law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, which crimes would be enforceable in a federal civil RICO cause of action." *Ayres*, 234 F.3d at 520. And

second, the "proof of the alleged federal mail and wire fraud crimes involves a very substantial federal question," which was whether "a breach of the disclosure duty under the Safety Act constitutes a federal mail and wire fraud crime." *Ayres*, 234 F.3d at 519–20. Nothing in the present Trump Media action requires the circuit court to determine whether the alleged conduct amounts to a violation of federal securities law, and the existence of a securities law violation is not an essential element to any claim by Plaintiffs. The circuit court must adjudicate whether the alleged conduct amounts to a violation of Florida law.

## IV.   CONCLUSION

Plaintiffs' emergency motion to remand (Doc. 14) is **GRANTED**. This action is **REMANDED** to the circuit court for Sarasota County, Florida.[2] Although flawed, Defendants ARC and Orlando's arguments in favor of removal were not objectively unreasonable. Therefore, Plaintiffs' motion for attorney's fees and costs is **DENIED**. The clerk must transmit a certified copy of this order to the clerk of the circuit court and close the case.

**ORDERED** in Tampa, Florida, on September 17, 2024.

*/s/ Steven D. Merryday*

---

[2] Nothing in the complaint, the amended complaint, or the second amended complaint states a basis for federal subject-matter jurisdiction. Although Defendants argue this point, the notice of removal is untimely. Defendants' timeliness argument suffers the same fatal defect as the defendants' argument for "federal question" jurisdiction.

11

                                                        STEVEN D. MERRYDAY
                                                        UNITED STATES DISTRICT JUDGE[*]

---

[*] Signed by Judge Steven D. Merryday to expedite the resolution of this motion. This case remains assigned to Judge Kathryn Kimball Mizelle.